1  MELINDA HAAG (CABN 132612)
United States Attorney

2
DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  BENJAMIN KINGSLEY (NYBN 4758389)
Assistant United States Attorney
5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Telephone: (415) 436-6937
        FAX: (415) 436-7234
7       benjamin.kingsley@usdoj.gov

8  Attorneys for the United States

9               UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12
UNITED STATES OF AMERICA,            )  NO. CR 13-720 CRB
13                                    )
        Plaintiff,                    )  **UNITED STATES'**
14                                    )  **SENTENCING MEMORANDUM**
        v.                            )
15                                    )
PAUL SLOANE DAVIS,                    )
16                                    )
        Defendant.                    )
17  _____  )

18                    **INTRODUCTION**

19        On March 19, 2015, defendant pleaded guilty to Counts One through Fourteen of the Indictment,

20  charging him with conspiracy, mail fraud, and wire fraud, in violation of 18 U.S.C. §§ 1349, 1341, and

21  1343, respectively.  There is no plea agreement in this case.

22        Co-defendant Diane Cobb pleaded guilty on July 2, 2014.  Dkt. 29.  She is awaiting sentencing,

23  but in her plea agreement agreed to recommend "a sentence of imprisonment of no less than the low end

24  of the Guidelines range for offense level 22 and [her] Criminal History Category as calculated by the

25  Court," which, with a Criminal History Category of I, would be 41 months.  Dkt. 29 at 5.

26        U.S. Probation has recommended that the defendant is in Criminal History Category I, and has

27  recommended an Offense Level of 25, resulting in a Guidelines range for defendant of 57 to 71 months

28  of imprisonment.  Probation also recommends a downward variance, based on § 3553 factors, to a

**SENTENCING MEMORANDUM**

1    sentence of  24 months' imprisonment, followed by three years of supervised release, $1,713,099.37 in

2    restitution, and no fine.

3        The government agrees with Probation's calculation of the defendant's Guidelines Range of 57

4    to 71 months.  The government recommends a low-end Guidelines sentence of 57 months, followed by

5    three years of supervised release, $1,713,099.37  in restitution, and no fine.

6                      **DISCUSSION**

7    **A.**       **The Defendant's Guideline Calculation**

8        The government agrees with Probation's calculation of the Guidelines, set forth below:

9   

| | | |
|---|---|---|
| a. | Base Offense Level, § 2B1.1(a)(1) | 7 |
| b. | Loss or gain amount, § 2B1.1(b)(1) | +16 |
| c. | 10 or more victims, § 2B.1.1(b)(2)(A)(i) | +2 |
| d. | Vulnerable victim, § 3A1.1(b)(1) | +2 |
| e. | Acceptance of Responsibility | -2 |
| f. | Adjusted offense level | 25 |

Defendant, along with his co-conspirator Diane Cobb, defrauded at least 21 investors, many of whom

were retirees, out of well over $2 million, with Ponzi payments going back to some investors, for a total

loss of $1,713,099.37.  PSR ¶¶ 10, 17.  This results in a +2 enhancement for the number of victims and a

+16 point enhancement for a loss amount of greater than $1 million under § 2B1.1(b)(1)(I).

       One of defendant's victims, C.C., was in her early 70s when her husband died in a car accident

and defendant personally visited her to convince her to invest her husband's life insurance proceeds with

defendant.  PSR ¶ 16.  This results in a +2 enhancement for a vulnerable victim under § 3A1.1(b)(1),

and this enhancement applies only to defendant and not to Ms. Cobb.

       Finally, defendant was charged in October 2013 and arrested November 2013, but did not plead

guilty until March 19, 2015, about 17 months after his arrest, slightly over 3 weeks before trial was

scheduled to begin, and after the government had expended substantial resources preparing for trial.

PSR ¶ 1.  Defendant thus did not timely notify the government of his intention to plead, so the

government is not recommending the third point under § 3E1.1(b).

       Given that the defendant's Adjusted Offense Level is 25, and his Criminal History Category is I,

his Guidelines range is 57 to 71 months.

**SENTENCING MEMORANDUM**

1

2

**B.      A Sentence of 57 Months Is Sufficient but Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a)**

3

4

Defendant, along with Diane Cobb, operated a significant Ponzi scheme over many years, stealing several million dollars in savings from over 20 victims around the country.  His fraud was pathological, and involved stealing the retirement and educational savings of older individuals and spending it on meals at nice restaurants and expensive travel.  There are no mitigating explanations to justify his fraud.  For all of the reasons contemplated by § 3553 and the Sentencing Guidelines, he deserves a sentence of 57 months imprisonment.

5

6

7

8

*1.      Nature and Circumstances of the Offense*

9

10

Defendant and Ms. Cobb operated a classic Ponzi scheme through their company, DM Financial. Defendant's role was the founder and "managing partner" of DM Financial, and according to victims, he was primarily involved in soliciting clients and investors while Ms. Cobb handled paperwork behind the scenes.  PSR ¶¶ 8, 14.  Defendant took advantage of his connections within the community of employees of Department of Energy contractors, for whom he did taxes and brokered mortgages.  PSR ¶ 9.  At some point, defendant began soliciting his tax and mortgage clients, as well as others, as investors in what were represented to be bridge loans to other contractors.  PSR ¶ 9.  The premise behind the bridge loans was that contractors needed to move around frequently and at times on short notice, and that sometimes, they would not be able immediately to sell their existing house before moving.  PSR ¶ 9. The bridge loans were described as providing financing for a down payment on a home in a new location, and would then be paid back whenever the borrower was able to sell their previous home.  PSR ¶ 9.

11

12

13

14

15

16

17

18

19

20

21

Defendant and Ms. Cobb relied on their reputation within the contractor community, prior business dealings as a loan broker and tax preparer, and their apparent "close association" with the contractor companies to pitch these investments.  Victim Impact Statement of J.P. at 1. ("The defendants gained our trust over 20 years and 3 generations of contact with my family and by their close association with companies my family has worked for. . . . the [defendants] performed numerous apparently legitimate mortgage transactions or refinance quotations over the years to gain our trust . . .").  Because those within the contractor community were aware that other employees needed to move around a lot

22

23

24

25

26

27

28

**SENTENCING MEMORANDUM**

1   and generally viewed their colleagues as creditworthy people, the victims believed these were safe

2   investments, and accepted defendant and Ms. Cobb's representations there were actually borrowers on

3   the other end of their loans.  PSR ¶ 11.  In reality, there were not.  Instead, defendant and Ms. Cobb used

4   the names and other personal identifying information of their other financial clients (including some of

5   their victim investors) as fake borrowers to convince their victims to invest, and then stole the money for

6   themselves.  PSR ¶¶ 12–13.

7         The government's financial investigation focused on the period from 2009 to 2013.  During that

8   time, defendant and Ms. Cobb solicited and received investments of $2.4 million.  PSR ¶¶ 10, 15.

9   Approximately $900,000 was paid to back to investors as Ponzi payment, and approximately $1.5

10  million was pocketed by defendant and Ms. Cobb.  PSR ¶ 10.  Defendant spent the money on a

11  luxurious lifestyle, using the DM Financial corporate American Express card regularly for day-to-day

12  expenses, to pay for meals at nice restaurants, and for expensive trips to Thailand and other places.  PSR

13  ¶ 15.  This card was paid back out of investor funds.  PSR ¶ 15.

14        The impact on their victims, who believed that they were making a safe investment in their

15  fellow Department of Energy contractors, was substantial.  These were not wealthy individuals with

16  money to burn.  They were regular individuals who made investments that they believed would be safe

17  and would support essential parts of their lives.  A large number of victims were older and invested their

18  retirement money with defendant and Ms. Cobb.  *See, e.g.*, Victim Impact Statement of A.C. at 1 ("This

19  crime occurred a few years after I retired and the funds I have lost represent a significant part of my

20  retirement savings."); Victim Impact Statement of L.L. and M.L. at 1 ("[W]e had worked hard and long

21  to have money for our retirement.  This was to be security for us in old age.  We are retired and have no

22  way to recover such a large loss."); Victim Impact Statement of S.B. at 1 ("The principal was part of my

23  retirement funds, and the lost income is part of what I relied on to pay for our monthly expenses.  At 67

24  years of age, and in an effective retirement mode, it will not be possible for me to recoup the loss.").

25  Other victims lost the money that they had saved for the education of their children.  *See* Victim Impact

26  Statement of J.P. at 1 ("The invested funds were part of those planned for the education of our

27  children."); Victim Impact Statement of K.S. at 1 ("We planned to withdraw our investment in the fall of

28  2013 to pay for the remainder of college expenses for our children.").  Others effectively were unable to

**SENTENCING MEMORANDUM**

1    keep their homes.  *See* Victim Impact Statement of R.A. at 1 ("From a monetary standpoint Sloane and

2    Diane basically stole our house.  We are currently renting a home . . . .").

3         Further, at least one investor, C.C., traumatically lost all of her savings to defendant.  C.C.'s

4    husband had invested with defendant since the 1990s.  Victim Impact Statement of C.C. at 1.  C.C. then

5    invested $60,000 of inheritance from her mother with defendant and Ms. Cobb in 2008.  *Id.* at 2.  Then,

6    after C.C.'s husband died in a car accident in 2009, defendant personally flew to visit C.C. and solicited

7    C.C.'s husband's life insurance money as an investment.  *Id.* at 3.  As defendant was soliciting these

8    fraudulent investments from C.C., he and Ms. Cobb were using C.C.'s name as a "borrower" on

9    investments they obtained from other victims.  *Id.* at 3.  C.C. is in her late 70s, has been left with no

10   retirement funds and a reverse mortgage on her home, and is living on Social Security.  *Id.* at 1.  All of

11   the money she invested with defendant and Ms. Cobb disappeared.  *Id.* at 4.

12        This conduct is egregious—stealing approximately $2.4 million from retirement and college

13   funds and spending it on fancy dinners and vacations, and, supports a lengthy term of imprisonment.

14        *2.      History and Characteristics of Defendant*

15        Defendant's personal, educational, and professional background also supports a substantial

16   sentence.  Defendant was raised in a stable household, the child of two Methodist ministers.  PSR ¶ 44.

17   He suffered no mistreatment or traumatic experiences in his youth, PSR ¶ 44, and he has no substance

18   abuse problems, PSR ¶ 51.  He graduated from college and has a master's degree in accounting from

19   San Francisco State University.  PSR ¶ 52.  He worked as a financial professional for most of his career,

20   before taking advantage of his profession and committing this fraud.  PSR ¶ 53.

21        Probation suggests that "defendant's age, lack of prior criminal history, and the need to pay

22   significant restitution" warrant a sentence below the Guidelines range.  PSR Sentencing

23   Recommendation at 2.  Defendant has had no legitimate source of income for years and, given his

24   substantial financial fraud, defendant is unlikely to obtain legitimate work as a tax preparer or mortgage

25   broker in the future.  The possibility of defendant making restitution should not be a factor in his

26   sentencing.  Additionally, defendant's lack of criminal history is typical for a white-collar defendant, is

27   reflected in his Criminal History Category, and does not warrant a sentence below the Guidelines range.

28

**SENTENCING MEMORANDUM**

1    The only significant mitigating fact in this case is defendant's age.  However, defendant engaged

2  in the fraud at least since 2009, when he was 70, and, based on the victim statement of C.C., likely much

3  earlier than that.  Defendant should not be rewarded at sentencing for avoiding detection, prosecution,

4  and sentencing for at least seven years.  A number of his victims were also elderly, and he stole the

5  money of those individuals, leaving them without the retirement that he was able to enjoy while he was

6  stealing $2.4 million from them.  His age does not outweigh the many other factors that strongly favor a

7  lengthy term of imprisonment.

8                                                    **CONCLUSION**

9    With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United

10  States respectfully requests that the Court impose a low-end Guidelines sentence of 57 months of

11  imprisonment, three years of supervised release, $1,713,099.37 in restitution, and a $100 special

12  assessment per count.

13

14  DATED: August 12, 2015                                    Respectfully submitted,

15                                                            MELINDA HAAG
                                                              United States Attorney
16

17                                                            _____/s/_____

18                                                            BENJAMIN KINGSLEY
                                                              Assistant United States Attorney
19

20

21

22

23

24

25

26

27

28

**SENTENCING MEMORANDUM**

6